**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| BERKLINE/BENCHCRAFT HOLDINGS ) | Case No. 11-11369 (___) |
| LLC, <u>et al.</u>,[1] ) | |
| ) | Joint Administration Requested |
| Debtors. ) | |

## DEBTORS' MOTION FOR INTERIM AND FINAL ORDERS (A) AUTHORIZING USE OF CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION PURSUANT TO 11 U.S.C. § 363; (B) MODIFYING AUTOMATIC STAY UNDER 11 U.S.C. 362; AND (C) SCHEDULING FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001

The above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>") hereby submit this motion (the "<u>Motion</u>") for the entry of an interim order, substantially in the form annexed hereto as <u>Exhibit A</u> hereto (the "<u>Interim Order</u>"), and a final order (the "<u>Final Order</u>" and, together with the Interim Order, the "<u>Orders</u>"), pursuant to Sections 105(a), 363, and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101 <u>et seq.</u> (the "<u>Bankruptcy Code</u>"), Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and Rule 4001-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "<u>Delaware Local Rules</u>"), (A) authorizing the Debtors to use Cash Collateral[2] and providing adequate protection to the Agent and Lenders on the one hand, and Subordinated Agent and Subordinated Lenders, on the other hand (collectively, the "<u>Secured Parties</u>") for any diminution in value of their respective interests in the Cash Collateral and other Prepetition Collateral; (B) modifying

---

[1] The Debtors are the following entities (followed by the last four digits of each Debtor's tax identification number): Berkline/BenchCraft Holdings, LLC (0921), (ii) Berkline/BenchCraft, LLC (391), (iii) Berkline, LLC (0898), (iv) Blue Mountain Trucking Corporation (5494), (v) BenchCraft, LLC (0912), and (vi) BenchCraft International Sourcing, Inc. (3121). The mailing address for all of the Debtors for the purpose of these chapter 11 cases is One Berkline Drive, Morristown, TN 37815.

[2] Capitalized terms not otherwise defined or referenced herein shall have the meanings ascribed to them in the Interim Order. To the extent that there is any conflict between this Motion and the Interim Order, the Interim Order shall control.

the automatic stay imposed under Section 362 of the Bankruptcy Code to the extent necessary to effectuate the terms and conditions of the Interim Order; and (C) scheduling a final hearing pursuant to Bankruptcy Rule 4001 with respect to the relief requested herein. In support of the Motion and the relief requested herein, the Debtors rely on and incorporate by reference the *Declaration of Keith Cooper in Support of the First Day Motions* (the "First Day Declaration"), filed concurrently herewith, and respectfully states as follows:

## JURISDICTION

1. This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b). Venue of these Cases and this Motion in this Court is proper under 28 U.S.C. §§ 1408 and 1409.

2. The statutory bases for the relief requested herein are Bankruptcy Code Sections 105(a), 363, and 507, and Bankruptcy Rule 4001.

## BACKGROUND

**A.     Introduction**

3. On the date hereof (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

4. The Debtors continue to operate their business and manage their properties as debtors in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner or official committee of unsecured creditors (the "Creditors Committee") has been appointed in the Cases.

5. The factual background regarding the Debtors, including their business operations, their capital and debt structure, and the events leading to the filing of the Cases, is set forth in detail in the First Day Declaration.

**B. The Debtors' Urgent Need For Use of Cash Collateral**

6. In order to operate during these Chapter 11 proceedings and effectuate an orderly liquidation of their assets, the Debtors need to utilize the Prepetition Collateral, including the Cash Collateral. As the Debtors do not have any unencumbered funds, use of Cash Collateral is required for paying the day-to-day operating expenses (including, without limitation, employee payroll and other benefits, rent, utilities) and the various other items reflected in the Budget (as defined in the Interim Order and attached thereto as <u>Exhibit B</u>). Without the use of Cash Collateral, the Debtors will not be able to pay for services and expenses and will be forced to immediately shut-down operations and terminate their employees, all of which will result in substantial harm to the Debtors' estates and their liquidation efforts.

7. Given the Debtors' dire financial circumstances and unsuccessful alternative reorganization efforts, and recognizing the urgent need for the use of Cash Collateral, the Debtors entered into negotiations with the Secured Parties regarding a consensual use of Cash Collateral. The parties have agreed to the Debtors' use of Cash Collateral on the terms set forth in the agreed form of proposed Interim Order attached hereto as <u>Exhibit A</u>.

**C. Grant of Adequate Protection**

8. Pursuant to Sections 363 of the Bankruptcy Code, and in exchange for the consent of the Secured Parties to the Debtors' use of Cash Collateral, the Debtors have agreed to grant adequate protection to the Secured Parties (including for any decrease in the value of such interests in the Prepetition Collateral from and after the Petition Date) as follows:

(a) **Allowance of the Agent's and Lenders' Claim and Priority of Prepetition Liens**. Subject to the right of the Creditors Committee to challenge and investigate the validity, priority, extent, perfection, and enforceability of the Prepetition Liens as set forth in the Interim Order, (1) the Prepetition Liens shall constitute Priority Liens, subject only to the Permitted Priority Liens; (2) the Prepetition Debt shall constitute the legal, valid and binding obligation of the Debtors, enforceable in accordance with the terms of the Prepetition

Documents; (3) no offsets, defenses or counterclaims to the Prepetition Debt exist, and no portion of the Prepetition Debt is subject to avoidance, recharacterization or subordination pursuant to the applicable provisions of the Bankruptcy Code or applicable non-bankruptcy law; and (4) (a) Agent's and Lenders' claim with respect to the Prepetition Debt consisting of Prepetition Revolver Obligations shall for all purposes constitute an allowed secured claim within the meaning of 11 U.S.C. § 506 in an amount not less than $4,294,401.33, exclusive of accrued and accruing Allowable 506(b) Amounts, and (b) Agent's and Lenders' claim with respect to all other Prepetition Debt shall for all purposes constitute an allowed claim within the meaning of 11 U.S.C.§ 506(b) in an amount not less than $11,118,010.47.

(b) **Allowance of Subordinated Agent's and Subordinated Lenders' Claim and Priority of Second Priority Liens**. Subject to the right of the Creditors Committee to challenge and investigate the validity, priority, extent, perfection, and enforceability of the Second Priority Liens as set forth in the Interim Order: (1) the Second Priority Liens shall constitute Priority Liens, subject only to the Prepetition Liens, the Replacement Liens and the Permitted Priority Liens; (2) the Subordinated Obligations constitute the legal, valid and binding obligation of the Debtors, enforceable in accordance with the terms of the Subordinated Credit Agreement; (3) no offsets, defenses or counterclaims to the Subordinated Obligations exist, and no portion of the Subordinated Obligations is subject to avoidance or subordination pursuant to the Bankruptcy Code or applicable nonbankruptcy law; and (4) the Subordinated Agent's and the Subordinated Lenders' claim with respect to the Subordinated Obligations as of the Petition Date shall for all purposes constitute an allowed claim within the meaning of 11 U.S.C. § 506 in an amount not less than $194,685,459.

(c) **First Priority Replacement Liens**. The Agent and Lenders will be granted additional and replacement security interests and liens (the "Replacement Liens") in the Postpetition Collateral, as security for payment of the Prepetition Debt, which Replacement Liens shall be subject only to the Permitted Priority Liens, (1) shall be in addition to the Prepetition Liens; (2) are and shall be properly perfected, valid and enforceable liens without any further action by the Debtors, the Agent or Lenders and without the execution, filing or recordation of any financing statements, security agreements, mortgages or other documents or instruments; and (3) shall remain in full force and effect notwithstanding any subsequent conversion or dismissal of the Cases.

(d) **Second Priority Replacement Liens**. The Subordinated Agent and Subordinated Lenders will be granted additional and replacement security interests and liens (the "Second Priority Replacement Liens") in the Postpetition Collateral as security for payment of the Subordinated Obligations, which Second Priority Replacement Liens shall be subject only to the Replacement Liens, the Prepetition Liens and the Permitted Priority Liens, (1) shall be in addition to the Second Priority Liens; (2) are and shall be properly perfected, valid and enforceable without any further action by the Debtors, Subordinated Agent or Subordinated Lenders and without the execution, filing or recordation of any financing statements, security agreements, mortgages or other documents or instruments; and (3) shall remain in full force and effect notwithstanding any subsequent conversion or dismissal of the Cases.

(e) **Allowed Code § 507(b) Claim**. If and to the extent the adequate protection of the interests of the Agent and Lenders in the Prepetition Collateral granted pursuant

to the Interim Order is insufficient, the Agent and Lenders shall have an allowed claim under Section 507(b) of the Bankruptcy Code, subject only to the Carveout, in the amount of any such deficiency, with priority over: (1) all costs and expenses of administration of the Cases that are incurred under any provision of the Bankruptcy Code; and (2) the claims of any other party in interest under Section 507(b) of the Bankruptcy Code. The Subordinated Agent and Subordinated Lenders shall not assert any claims under Section 507(b) of the Bankruptcy Code until the Prepetition Revolver Obligations are indefeasibly paid in full.

## RELIEF REQUESTED AND BASIS THEREFOR

9. By this Motion, the Debtors seek entry of the Interim and Final Orders, inter alia (a) authorizing, under Bankruptcy Code Sections 361, 363(c)(2) and 363(e), the Debtors to use the Prepetition Collateral, including the Cash Collateral, and to provide adequate protection (as set forth in the Interim Order) with respect to any diminution in the value of the Prepetition Collateral, and (b) modifying the automatic stay under Bankruptcy Code Section 362 to the extent necessary to implement the relief contemplated herein, as set forth in the Interim Order, and (c) scheduling a Final Hearing on the Motion, pursuant to Bankruptcy Rule 4001, and establishing notice procedures in respect of the Final Hearing and entry of the Final Order.

**A.     Provisions that Potentially Implicate Local Rule 4001-2**

10. The applicable provisions of the Interim Order required to be highlighted pursuant to Delaware Rule 4001-2 are set forth as follows:

(a)     Local Rule 4001-2(a)(i)(A) requires the disclosure of provisions that grant cross-collateralization protection – There is no cross-collateralization.

(b)     Local Rule 4001-2(a)(i)(B) requires the disclosure of provisions or findings of fact that bind the estate with respect to validity, amount or perfection of liens or a waiver of claims, without first giving certain parties in interest an opportunity to conduct an investigation – The Debtors are proposing to grant adequate protection to the Agent and Lenders, on the one hand, and the Subordinated Agent and Subordinated Lenders, on the other hand, including allowed Priority Liens and Second Priority Liens, respectively, but subject to the right of the Creditors Committee, any Trustee, or other party in interest to investigate and challenge Prepetition Liens and Second Priority Liens. See Interim Order ¶ 8.

(c)     Local Rule 4001-2(a)(i)(C) requires disclosure of provisions that seek to waive, without notice, whatever rights the estate may have under Section 506(c) of the

Bankruptcy Code – The Final Order will provide for a waiver of rights under Section 506(c). See Interim Order ¶ 7.

   (d) Local Rule 4001-2(a)(i)(D) requires disclosure of provisions that immediately grant the prepetition secured creditor liens on avoidance actions – The Final Order will provide for a grant of liens on avoidance actions.

   (e) Local Rule 4001-2(a)(i)(E) requires disclosure of provisions that use postpetition loans to repay prepetition debt – Not applicable.

   (f) Local Rule 4001-2(a)(i)(F) requires disclosure of provisions that provide disparate treatment to professionals retained by the creditors committee from professionals retained by the Debtors – The Carveout being provided for in the Interim Order is being allocated among the Debtors' and the Creditor Committee's professionals pursuant to the Budget. See Interim Order ¶ 6, Budget (Exhibit B to Interim Order).

   (g) Finally, Local Rule 4001-2(a)(i)(G) requires disclosure of provisions that prime any secured liens without the consent of the lienholder – Not applicable.

11. The justification for such provisions is the immediate and critical need for the Debtors' use of Cash Collateral. As discussed above, the Debtors do not have any unencumbered funds or access to liquidity. Further, despite their efforts, the Debtors were unsuccessful in effectuating an alternative reorganization strategy. These provisions are essential to obtaining the approval of Secured Parties, and to avoid the uncertainty of a contested hearing on the use of Cash Collateral. Accordingly, the Debtors respectfully submit that above-described provisions are necessary and appropriate and should be authorized and approved by this Court.

## APPLICABLE AUTHORITY

### A. Use of Cash Collateral and Grant of Adequate Protection is Necessary and Appropriate

12. The Debtors require use of Cash Collateral to be able to pay the Debtors' operating costs, including payroll and other overhead costs (such as rent and utilities), as well as third parties and vendors, and the expenses of the Cases, all as set forth and in accordance with the Budget. Without access to immediate liquidity, the Debtors' estates will suffer irreparable harm, and the Debtors will not be able to maximize the value of their assets.

13. Bankruptcy Code Section 363(c)(2) provides that the Debtors may not use, sell, or lease cash collateral unless "(A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section." 11 U.S.C. § 363(c)(2). In addition, Section 363(e) of the Bankruptcy Code provides that "on request of an entity that has an interest in property used… or proposed to be used… by a [debtor-in-possession], the court, with or without a hearing, shall prohibit or condition such use… as is necessary to provide adequate protection of such interests." 11 U.S.C. 363(e).

14. Subject to the terms and provisions of the Interim Order, the Secured Parties have consented to the Debtors' use of the Prepetition Collateral in exchange for certain adequate protections to the extent of the Secured Parties' interest in the Prepetition Collateral from any diminution in value. To that end, the Debtors and the Secured Parties have negotiated, and the Debtors respectfully request that the Court approve the grant of adequate protection in accordance with the Interim Order, including the (a) Replacement Liens and Second Priority Replacement Liens, (b) Section 507(b) claim (solely with respect to the Agent and Lenders), (c) allowance of the Prepetition Liens and claims of the Agent and Lenders as superpriority claims, subject only to the Permitted Priority Liens, (d) allowance of the Second Priority Liens and claims of the Subordinated Agent and Subordinated Lenders, subject only to the Prepetition Liens, the Replacement Liens and the Permitted Priority Liens, and (e) payment of the Prepetition Revolver Obligations and the other Prepetition Debt in accordance with the Participation Agreement, the Credit Agreement and the other Prepetition Documents.

15. The determination of adequate protection is a fact-specific inquiry to be decided on a case-by-case basis. See In re Mosello, 195 B.R. 277, 288 (Bankr. S.D.N.Y. 1996) (noting

that "its application is left to the vagaries of each case… but its focus is protection of the secured creditor from diminution in the value of its collateral during the reorganization process") (quoting In re Beker Indus. Corp., 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986)). The Debtors submit that the proposed adequate protection is fair and reasonable and in accord with the principles of the Bankruptcy Code. Further, the Secured Parties have agreed that the adequate protection described above is sufficient to allow the Debtors to use the Cash Collateral and also fully support this Motion.

16. Based upon the foregoing, the Debtors respectfully request that the Court authorize the Debtors to access the Prepetition Collateral, including the Cash Collateral, and to provide adequate protection in accordance with the terms set forth in the Interim Order.

**B. Modification of the Automatic Stay**

17. Pursuant to Section 362 of the Bankruptcy Code an automatic stay is imposed upon the filing of a bankruptcy petition. The proposed use of Cash Collateral requires modification of the automatic stay with respect to the Aggregate Collateral. Accordingly, the Debtors respectfully request that the Court authorize the modification of the automatic stay in accordance with the terms set forth in the Interim Order.

**C. The Interim Order Should Be Granted**

18. Bankruptcy Rules 4001(b) and (c) provide that a final hearing on a motion to use cash collateral pursuant to Section 363 of the Bankruptcy Code may not be commenced earlier than 15 days after the service of such motion. Upon request, however, the Court is empowered to conduct a preliminary expedited hearing on the motion and to authorize the use of cash collateral and the obtaining of credit to the extent necessary to avoid immediate and irreparable harm to a debtor's estate.

19. The Debtors respectfully request that the Court schedule and conduct an initial hearing on the Motion and authorize the Debtors from the entry of the Interim Order until the Final Hearing to allow the Debtors to utilize the Cash Collateral. This relief will enable the Debtors to continue operating their businesses and preserve the value of their assets, and therefore avoid immediate and irreparable harm and prejudice to the estates and all parties in interest pending the Final Hearing.

**D.    Establishing Notice Procedures and Scheduling Final Hearing**

20. Notice of this Motion will be given to: (i) the Office of the United States Trustee for the District of Delaware; (ii) the Debtors' thirty (30) largest unsecured creditors on a consolidated basis; (iii) counsel to the Agent; (iv) counsel to the Lenders; (v) counsel to the Subordinated Lenders; (vi) counsel to the holders of the Sub Notes; (vii) the Internal Revenue Service; (viii) the Subordinated Agent, or its counsel if known; (ix) the Office of the United States Attorney General for the District of Delaware; (x) applicable state regulatory authorities; and (xi) any individuals or entities that have asserted a lien or interest in any of Debtors' assets (collectively, the "<u>Initial Notice Parties</u>"). The Debtors submit that, under the circumstances, no further notice of the hearing is necessary and request that any further notice be dispensed with and waived.

21. The Debtors further respectfully request that the Court schedule the Final Hearing and authorize them to mail copies of the signed Interim Order, which fixes the time, date and manner for the filing of objections, to the Initial Notice Parties and any party that has filed prior to such date a request for notices with this Court. The Debtors request that the Court consider such notice of the Final Hearing, including without limitation, notice that the Debtors will seek

approval at the Final Hearing of a waiver of rights under Bankruptcy Code Section 506(c) to be sufficient notice under Bankruptcy Rule 4001 and Local Rule 2002-1.

22. No previous request for the relief sought herein has been made to this Court or any other court.

## CONCLUSION

WHEREFORE the Debtors respectfully request that the Court (i) enter an order substantially in the form of the proposed Interim Order attached hereto as <u>Exhibit A</u>; (ii) after the Final Hearing, enter the Final Order substantially in the form that shall be filed with the Court; and (iii) such other and further relief as this Court may deem just and proper.

Dated: Wilmington, Delaware
        May 2, 2011

YOUNG CONAWAY STARGATT & TAYLOR, LLP

    */s/ Kenneth J. Enos*
Michael R. Nestor (No. 3526)
Kenneth J. Enos (No. 4544)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

-and-

MORGAN LEWIS & BOCKIUS, LLP
Neil E. Herman
Annie C. Wells
101 Park Avenue
New York, New York 10178-0060
Telephone: (212) 309-6000
Facsimile: (212) 309-6001

*Proposed Counsel for Debtors and Debtors-in-Possession*