# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Berkline/BenchCraft Holdings, LLC, <u>et al.</u>,[1] | Case No. 11-11369 (MFW) |
| Debtors. | Jointly Administered |
| | **Ref. Docket Nos. 177 and 209** |

## ORDER APPROVING (I) SALE OF INTELLECTUAL PROPERTY AND (II) ASSET PURCHASE AGREEMENT

Upon consideration of the motion (the "<u>Motion</u>") of the above-captioned debtors and debtors and possession (collectively, the "Debtors") for entry of an order, pursuant to sections 105(a) and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101 <u>et seq.</u> (the "<u>Bankruptcy Code</u>"), and Rules 2002, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and Rule 6004-1 of the Local Rules of Bankruptcy Practice and Procedure for the United States Bankruptcy Court for the District of Delaware (the "<u>Local Rules</u>"), (i) authorizing the sale of the Intellectual Property[2] on an "as is, where is" basis, free and clear of all liens, claims, encumbrances and interests to Ashley Furniture Industries, Inc., or its assignee or designee, (the "<u>Purchaser</u>") as more fully set forth in the Asset Purchase Agreement, dated July 1, 2011, in substantially the form annexed hereto as <u>Exhibit I</u> (the "<u>Purchase Agreement</u>"), and (ii) granting related relief; and the Court having determined that the relief requested in the Motion is in the best interests of the Debtors, their estates, creditors and other parties-in-interest; and due and adequate notice of the Motion having been given under the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Berkline/BenchCraft Holdings, LLC (0921), Berkline/BenchCraft, LLC (3917), Berkline, LLC (0898), BenchCraft, LLC (0912), Blue Mountain Trucking Corporation (5494), and BenchCraft International Sourcing, Inc. (3121). The mailing address for each of the Debtors is One Berkline Drive, Morristown, TN 37815.

[2] Capitalized terms not defined herein shall have the meanings provided to them first in the Motion or the Purchase Agreement, as applicable.

circumstances; and a hearing having been held on the Motion on August 12, 2011 (the "Sale Hearing"); and upon the entire record in these cases; and after due deliberation thereon, and good and sufficient cause appearing therefor, it is hereby

## FOUND AND DETERMINED THAT:

### Jurisdiction, Final Order and Statutory Predicates

A.       The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. All findings of fact and conclusions of law announced by this Court at the Sale Hearing and any other proceeding related to the Motion are incorporated herein to the extent not inconsistent herewith. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.       This Court has jurisdiction over the Motion, the transactions contemplated by the Purchase Agreement and any other ancillary documents and agreements related thereto pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of these cases and the Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

C.       The statutory predicates for the relief sought in the Motion are sections 105 and 363 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004 and 9014 and Local Rule 6004-1.

D.       Due and adequate notice of the Motion, the proposed Sale, the Sale Hearing, and the subject matter thereof has been provided to all parties-in-interest herein, and no other or further notice is necessary. A reasonable opportunity to object or be heard with respect

YCST01:11349655.1

070177.1001

to the Motion and the relief requested therein has been afforded to all interested persons and entities.

## The Purchaser

E.     The Purchase Agreement and each of the transactions contemplated therein were negotiated, proposed and entered into by the Debtors and the Purchaser in good faith, without collusion and from arm's length bargaining positions. The Purchaser is a "good faith purchaser" within the meaning of section 363(m) of the Bankruptcy Code, and, as such, is entitled to all of the protections afforded thereby.

F.     The Purchaser is not an "insider" or "affiliate" of the Debtors as those terms are defined in the Bankruptcy Code. Neither the Debtors nor the Purchaser has engaged in any conduct that would cause or permit the sale of the Acquired Assets (as defined in the Purchase Agreement) to the Purchaser pursuant thereto and hereto, to be avoided under section 363(n) of the Bankruptcy Code. Specifically, the Purchaser has not acted in a collusive manner with any person and the aggregate price paid by the Purchaser for the Acquired Assets is not controlled by any agreement among the bidders.

G.     The Purchaser is purchasing the Acquired Assets in good faith and is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code. Accordingly, the Purchaser is entitled to all of the protections afforded under section 363(m) of the Bankruptcy Code. Neither the Debtors nor the Purchaser engaged in any conduct that would permit costs and damages to be imposed under section 363(n) of the Bankruptcy Code.

## No Fraudulent Transfer

H.     The consideration provided by the Purchaser to the Debtors for the Acquired Assets (i) is fair and reasonable, (ii) is the highest or best offer for the Acquired Assets,

(iii) will provide a greater recovery for the Debtors' creditors than would be provided by any other available alternative, and (iv) constitutes reasonably equivalent value (as those terms are defined in each of the Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act and section 548 of the Bankruptcy Code and under any other applicable laws of the United States, any state, territory or possession or the District of Columbia). The consideration provided by the Purchaser pursuant to the Purchase Agreement also constitutes fair consideration under the Bankruptcy Code and any other laws of the United States, any state, territory or possession or the District of Columbia. No other person, entity or group of entities has offered to purchase the Acquired Assets for greater economic value to the Debtors' estates than the Purchaser. The Debtors' determination that the Purchase Agreement constitutes the highest and best offer for the Acquired Assets constitutes a valid and sound exercise of the Debtors' business judgment.

I.  The Purchaser is not a mere continuation of the Debtors or their estates, and there is no continuity of enterprise between the Debtors or the Purchaser. The Purchaser is not holding itself out to the public as a continuation of the Debtors. The Purchaser is not a successor to the Debtors or their estates and the Sale does not amount to a consolidation, merger or *de facto* merger of the Purchaser and the Debtors.

**Validity of Transfer**

J.  The Debtors: (1) have full corporate power and authority to execute and deliver the Purchase Agreement and all other documents contemplated thereby, and the sale of the Acquired Assets by the Debtors have been duly and validly authorized by all necessary corporate action of the Debtors; (2) have all of the corporate power and authority necessary to consummate the transactions contemplated by the Purchase Agreement; and (3) have taken all corporate action necessary to authorize and approve the Purchase Agreement and the

YCST01:11349655.1

070177.1001

consummation by the Debtors of the transactions contemplated thereby. No consents or approvals, other than those expressly provided by the Purchase Agreement, are required for the Debtors to consummate the Sale, the Purchase Agreement or the transactions contemplated thereby. Neither the execution of the Purchase Agreement nor the consummation of the transactions in accordance with its terms will constitute a violation of any provision of the Debtors' organizational documents or any other contract, instrument, law, regulation or ordinance by which the Debtors are bound.

K.     The Purchase Agreement was not entered into for the purpose of hindering, delaying, or defrauding creditors under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia. Neither the Debtors nor the Purchaser is fraudulently entering into the transaction contemplated by the Purchase Agreement.

L.     Debtors have good and marketable title to the Acquired Assets and are the legal and equitable owners of the Acquired Assets and, upon entry of this Sale Order, they shall have full authority to consummate the transactions contemplated by the Purchase Agreement. The Purchase Agreement and the transactions have been duly and validly authorized by all necessary corporate action, as the case may be, of Debtors.

M.     Pursuant to section 363(f) of the Bankruptcy Code, the transfer of the Acquired Assets to the Purchaser shall be, as of the closing of the transactions contemplated by the Purchase Agreement (the "Closing Date"), a legal, valid and effective transfer of the Acquired Assets and shall vest the Purchaser with all right, title and interest of the Debtors in and to the Acquired Assets, free and clear of all claims (as defined in Section 101(5) of the Bankruptcy Code, "Claims"), liens (as defined in Section 101(37) of the Bankruptcy Code,

"Liens"), encumbrances and all other interests relating to, accruing or arising any time prior to the Closing Date (collectively including each of the foregoing, "Interests"), including, but not limited to: (1) those that purport to give to any party a right or option to effect any forfeiture, modification, right of first refusal or termination of the Debtors' interest in the Acquired Assets, or any similar rights; (2) those relating to taxes arising under or out of in connection with, or in any way relating to the operation of the Acquired Assets prior to the Closing Date; and (3) (a) those arising under all mortgages, deeds of trust, security interests, conditional sale or other title retention agreements, pledges, liens, judgments, demands, rights of set-off or recoupment, encumbrances, rights of first refusal or charges of any kind or nature, if any, including, but not limited to, any restriction on the use, voting, transfer, receipt of income or other exercise of any attributes of ownership, and (b) all debts arising in any way in connection with any agreements, acts or failures to act of any of the Debtors or any of the Debtors' predecessors or affiliates, Claims, obligations, liabilities, rights of set off or recoupment, demands, guaranties, options, rights, contractual or other commitments, restrictions, interests and matters of any kind and nature, whether known or unknown, contingent or otherwise, whether arising prior to or subsequent to the commencement of these bankruptcy cases, and whether imposed by agreement, understanding, law, equity or otherwise, including, but not limited to, Claims otherwise arising under doctrines of successor liability to the greatest extent permitted by applicable law.

N. On the Closing Date, this Order shall be construed and shall constitute for any and all purposes, a full and complete general assignment, conveyance and transfer of the Debtors' interest in the Acquired Assets. This Order is and shall be effective as a determination that, on the Closing Date, all Liens, Claims and other Interests of any kind or nature whatsoever existing as to the Acquired Assets prior to the Closing Date shall have been unconditionally

6

released, discharged and terminated, and that the conveyances described herein have been effected; provided, that such Liens, Claims and other Interests shall attach to the proceeds of the Sale in the order of their priority, with the same validity, force and effect which they now have against the Acquired Assets, subject to any claims and defenses the Debtors may possess with respect thereto.

O. This Order shall be binding upon and govern the acts of all persons and entities, including all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state and local officials, and all other persons and entities who may be required by operations of law, the duties of their respective office or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease, and each of the foregoing persons and entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Purchase Agreement.

P. To the greatest extent available under applicable law, the Purchaser shall be authorized, as of the Closing Date, to operate under any license, permit, registration and governmental authorization or approval of the Debtors with respect to the Acquired Assets, and all such licenses, permits, registrations and governmental authorizations and approvals are deemed to have been, and hereby are, deemed transferred to the Purchaser as of the Closing Date.

Q. To the extent permitted by section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any permit or license relating to the Acquired Assets,

transferred or conveyed to the Purchaser on account of the filing or pendency of these cases or the consummation of the transactions contemplated by the Purchase Agreement.

## Section 363(f) if Satisfied

R.      Considering that the conditions of section 363(f) of the Bankruptcy Code have been satisfied in full, the Debtors may sell the Acquired Assets free and clear of any Lien, Claim or Interest in the property. The Purchaser would not have entered into the Purchase Agreement and would not consummate the transactions contemplated thereby if the Sale as set forth in the Purchase Agreement by the Purchaser were not free and clear of all Liens, Claims and Interests.

S.      Except to the extent expressly stated in the Purchase Agreement, the Purchaser shall not be responsible for any Liens, Claims or Interests, including in respect of the following, unless otherwise prohibited by applicable law or statute: (1) any labor or employment agreements; (2) all mortgages, deeds of trust and security interests; (3) intercompany loans and receivables between the Debtors and any non-debtor subsidiary, (4) any pension, welfare, compensation or other employee benefit plans, agreements, practices and programs, including, without limitation, any pension plan of any Debtors; (5) any other employee, worker's compensation, occupational disease or unemployment or temporary disability related claim, including, without limitation, claims that might otherwise arise under or pursuant to (a) the Employee Retirement Income Security Act of 1974, as amended, (b) the Fair Labor Standards Act, (c) Title VII of the Civil Rights Act of 1964, (d) the Federal Rehabilitation Act of 1973, (e) the National Labor Relations Act, (f) the Worker Adjustment and Retraining Act of 1988, (g) the Age Discrimination and Employee Act of 1967 and Age Discrimination in Employment Act, as amended, (h) the Americans with Disabilities Act of 1990, (i) the Consolidated Omnibus Budget

YCST01:11349655.1

070177.1001

Reconciliation Act of 1A A985, (j) state discrimination laws, (k) state unemployment compensation laws or any other similar state laws, or (l) any other state or federal benefits or claims relating to any employment with the Debtors or any of their predecessors; (6) Claims, Liens or Interests arising under any environmental laws with respect to any assets owned or operated by Debtors or any of its corporate predecessor at any time prior to the Closing Date and any of the Debtors' liabilities other than those assumed under the Purchase Agreement; (7) any bulk sales or similar law; (8) any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended; and (9) any theories of successor liability or liabilities specifically excluded under the Purchase Agreement. The Purchaser is not acquiring or assuming any liability, warranty or other obligation of the Debtors, except as expressly set forth in the Purchase Agreement.

T.     The Debtors may sell the Acquired Assets free and clear of all Interests of any kind or nature whatsoever as contemplated by the Purchase Agreement because, in each case, one or more of the standards set forth in sections 363(f)(1) through 363(f)(5) of the Bankruptcy Code have been satisfied. Those holders of Interests that did not object, or who withdrew their objections to the Motion or the Sale, are deemed to have consented pursuant to sections 363(f)(2) and 365(c)(1) of the Bankruptcy Code. Those holders of Interests that did object fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code and are adequately protected by having their Interests, if any, attach to the net cash proceeds of the transactions ultimately attributable to the Acquired Assets against or in which they assert an Interest, subject to any claims and defenses the Debtors may possess with respect thereto.

U.     All persons and entities, including all debt security holders, equity security holders, governmental, tax and regulatory authorities, lenders, trade creditors, litigation

claimants and other creditors, holding Liens, Claims or other Interests of any kind or nature whatsoever against or in all or any portion of the Acquired Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, senior or subordinate), arising under or out of, in connection with or in any way relating to the Debtors, the Acquired Assets, the operation of the Debtors' businesses prior to the Closing Date or the transfer of the Acquired Assets to the Purchaser, hereby are forever barred, estopped and permanently enjoined from asserting against the Purchaser, any of its affiliates, its successors or assigns, its property or the Acquired Assets, such persons' or entities' Liens, Claims or Interests in and to the Acquired Assets, including, the following actions: (1) commencing or continuing in any manner any action or other proceeding against the Purchaser, any of its affiliates, its successors, assets or properties; (2) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Purchaser, any of its affiliates, its successors, assets or properties; (3) creating, perfecting or enforcing any Lien or other Claim against the Purchaser, any of its affiliates, its successors, assets or properties; (4) asserting any set-off, right of subrogation or recoupment of any kind against any obligation due the Purchaser, any of its affiliates or successors; (5) commencing or continuing any action, in any manner or place, that does not comply or is inconsistent with the provisions of this Order, other orders of this Court, the Purchase Agreement or actions contemplated or taken in respect thereof; or (6) revoking, terminating, failing or refusing to transfer or renew any license, permit or authorization to operate any of the Acquired Assets or conduct any of the businesses operated with the Acquired Assets.

V.     All persons and entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Debtors to sell

YCST01:11349655.1

070177.1001

and transfer the Acquired Assets to the Purchaser in accordance with the terms of the Purchase Agreement and this Order.

W.      The Purchaser has given substantial consideration under the Purchase Agreement for the benefit of the Debtors, their estates and creditors. The consideration given by the Purchaser shall constitute valid and valuable consideration for the releases of any potential Claims and Liens pursuant to this Order, which releases shall be deemed to have been given in favor of the Purchaser by all holders of Liens against or interests in, or Claims against the Debtors or any of the Acquired Assets. The consideration provided by the Purchaser for the Acquired Assets under the Purchase Agreement is fair and reasonable and accordingly the purchase may not be avoided under section 363(n) of the Bankruptcy Code.

X.      Effective as of the Closing Date, the Purchaser, its successors and assigns, shall be designated and appointed the Debtors' true and lawful attorney and attorneys, with full power of substitution, in the Debtors' name and stead, on behalf of and for the benefit of the Purchaser, its successors and assigns, for the limited purposes to give receipts and releases for and in respect of the Acquired Assets, or any part thereof, and from time to time to institute and prosecute against third parties for the benefit of the Purchaser, its successors and assigns, any and all proceedings at law, in equity or otherwise, ~~which the Purchaser, its successors and assigns, may deem proper for the collection or reduction to possession of any of the Acquired Assets.~~ *that pertain to the Acquired Assets and deemed proper by the Purchaser, its successors and assigns, including without limitation those proceedings for the collection or reduction to possession of any of the Acquired Assets (collectively, the "IP Causes of Action"). For the avoidance of*

Y.      A certified copy of this Order may be filed with the appropriate clerk and/or be recorded with the recorder to act to cancel any liens and other encumbrances of record.

*doubt, the IP Causes of Action shall not include any and all rights, assets, claims, interests and causes of action of the Debtors and their estates that does not pertain to the Acquired Assets*

070177.1001

## Compelling Circumstances for an Immediate Sale

Z.     Good and sufficient reasons for approval of the Purchase Agreement and the Sale have been articulated. The relief requested in the Motion is in the best interests of the Debtors, their estates, creditors and other parties-in-interest.  The Debtors have demonstrated (1) good, sufficient, and sound business purposes and justifications for the relief requested in the Motion, and (2) compelling circumstances for the Sale outside of (a) the ordinary course of business pursuant to section 363(b) of the Bankruptcy Code, and (b) a plan of reorganization, in that, among other things, the immediate consummation of the Sale to the Purchaser is necessary and appropriate to maximize the value of the Debtors' estates and the Sale will provide the means for the Debtors to maximize distribution to their creditors.

AA.     To maximize the value of the Acquired Assets, it is essential that the Sale occur within the time constraints set forth in the Purchase Agreement.  Time is of the essence in consummating the Sale.

BB.     The Purchase Agreement is a valid and binding contract between the Debtors and the Purchaser, which is and shall be enforceable according to its terms, and with the same force and effect as this Order.

CC.     All of the provisions of the Purchase Agreement are nonseverable and mutually dependent.

DD.     The Debtors have articulated good and sound business reasons for waiving the stay otherwise imposed by Bankruptcy Rules 6004(h) and 7062.

EE.     The Debtors' privacy policy does not prohibit the Sale and the Sale is consistent with the Debtors' privacy policy.

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.     The Motion is granted in its entirety.

2.     All objections, if any, to the Motion or relief provided herein that have not been withdrawn, waived or settled, and all reservations of rights included therein, are hereby overruled and denied on the merits.

3.     The Purchase Agreement, all transactions contemplated therein and all of the terms and conditions thereof are hereby approved.

4.     Pursuant to sections 105 and 363 of the Bankruptcy Code and the Purchase Agreement annexed hereto as Exhibit I, the Debtors are hereby authorized to sell, transfer, and convey the Acquired Assets to the Purchaser on the terms set forth in the Purchase Agreement and this Order.

5.     Except as otherwise set forth in the Purchase Agreement, the Acquired Assets are to be sold to the Purchaser "as is-where is," without any representations or warranties from the Debtors as to the quality or fitness of such assets for either their intended or any other purposes.

6.     The transfer of the Acquired Assets to the Purchaser pursuant to the Purchase Agreement constitutes a legal, valid, and effective transfer of the Acquired Assets, and shall vest the Purchaser with all right, title and interest of the Debtors in and to the Acquired Assets, free and clear of all Interests of any kind or nature.

7.     Pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, the Acquired Assets shall be transferred to the Purchaser, and upon the Closing shall be, free and clear of all Interests of any kind or nature whatsoever (including, but not limited to, those described in Recital M of this Order), and all such Interests of any kind or nature whatsoever shall attach to the net cash proceeds of the transactions in the order of their priority, with the

YCST01:11349655.1

070177.1001

same validity, force and effect that they now have as against the Acquired Assets, subject to any claims and defenses the Debtors may possess with respect thereto.

8.      All persons and entities, including, but not limited to, all debt security holders; equity security holders; governmental, tax and regulatory authorities; lenders; trade creditors; and other creditors holding Interests of any kind or nature whatsoever against or in the Debtors or the Acquired Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated), arising under or out of, in connection with or in any way relating to the Debtors, the Acquired Assets, the operation of the Acquired Assets prior to the Closing Date or the transactions are forever barred, estopped and permanently enjoined from asserting against the Purchaser, its successors or assigns, their property or the Acquired Assets such persons' or entities' Interests (including without limitation, any right of set-off or recoupment).

9.      Notwithstanding the foregoing, upon the Closing, each of the Debtors' creditors and any other holder of an Interest is authorized and directed forthwith to execute such documents and take all other actions as may be necessary to release its Interests in the Acquired Assets, if any, as such Interests may have been recorded or may otherwise exist. The failure of any party to execute such documents shall in no way impair or affect the terms of this Order which provide for the transfer of the Acquired Assets free and clear of all Interests.

10.     If any person or entity that has filed financing statements, mortgages, mechanic's liens, lis pendens or other documents or agreements evidencing Interests in the Debtors or the Acquired Assets shall not have delivered to the Debtors prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction or releases of all Interests that the person or entity has with respect to

the Debtors or the Acquired Assets or otherwise, then the Debtors are hereby authorized and directed to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to the Debtors or the Acquired Assets. To the extent neither the persons or entities holding the Interests nor the Debtors do so, the Purchaser is hereby authorized to file, register, or otherwise record a certified copy of this Order, which shall constitute conclusive evidence of the release of all Interests in the Debtors or the Acquired Assets of any kind or nature whatsoever.

11. This Order: (a) shall be effective as a determination that all Interests of any kind or nature whatsoever existing as to the Acquired Assets prior to the Closing Date have been unconditionally released, discharged and terminated as set forth herein, and that the conveyances described herein have been effected, and (b) shall be binding upon and shall govern the acts of all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state and local officials, and all other persons and entities who may be required by operation of law, the duties of their office or contract to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Acquired Assets.

12. The Debtors are hereby authorized in accordance with sections 105(a), 363 and 365 of the Bankruptcy Code to transfer to the Purchaser all right, title and interest in the license agreements identified in the Purchase Agreement (the "License Agreements") free and clear of all Interests and to execute and deliver to the Purchaser such documents or other instruments as may be necessary to assign and transfer the License Agreements to the Purchaser.

15

The License Agreements shall be transferred to, and remain in full force and effect for the benefit of, the Purchaser in accordance with their respective terms, notwithstanding any provision in any such License Agreement (including those of the type described in sections 365(b)(2) and (f) of the Bankruptcy Code) that prohibits, restricts or conditions such assignment or transfer.

13. The Purchaser shall have no successor or other liability or responsibility for any liability or other obligation of the Debtors arising under or related to the Acquired Assets. Without limiting the generality of the foregoing, the Purchaser shall not be liable for any Claims against the Debtors or any of their predecessors or affiliates, and the Purchaser shall have no successor or vicarious liabilities of any kind or character, including, but not limited to, any theory of antitrust, environmental, successor or transferee liability, labor law, *de facto* merger or substantial continuity, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether fixed or contingent, with respect to the Debtors or any obligations of the Debtors arising prior to the Closing Date, including, but not limited to, liabilities on account of any Taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of the Acquired Assets prior to the Closing Date. The Purchaser has given substantial consideration under the Purchase Agreement for the benefit of holders of Interests. The consideration given by the Purchaser shall constitute valid and valuable consideration for the releases of any potential Claims of successor liability against the Purchaser, which releases shall be deemed to have been given in favor of the Purchaser by all holders of Interests against the Debtors or the Acquired Assets.

14. The sale, transfer, assignment, and delivery of the Acquired Assets shall not be subject to any Interests, and Interests of any kind or nature whatsoever shall remain with,

and continue to be obligations of, the Debtors and their estates. All persons holding Interests against or in the Debtors or the Acquired Assets of any kind or nature whatsoever (including, but not limited to, the Debtors and/or their respective successors, including any trustees thereof, creditors, employees, unions, former employees and shareholders, administrative agencies, governmental units, secretaries of state and federal, state and local officials maintaining any authority relating to any environmental, health and safety laws, and their respective successors or assigns) hereby are forever barred, estopped and permanently enjoined from asserting, prosecuting or otherwise pursuing such Interests of any kind or nature whatsoever against the Purchaser, its property or its successors and assigns or the Acquired Assets, as an alleged successor or otherwise, with respect to any Interest of any kind or nature whatsoever such person or entity had, has or may have against or in the Debtors, their estates, their respective officers, directors or shareholders or the Acquired Assets. Following the Closing Date, no holder of an Interest in or against the Debtors or the Acquired Assets shall interfere with Purchaser's title to or use and enjoyment of the Acquired Assets based on or related to such Interest, or any actions that the Debtors have or may take in these chapter 11 cases.

15.     The transactions are undertaken by Purchaser without collusion and in good faith, in accordance with Bankruptcy Code sections 363(m) and 363(n). Accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the transactions under the Purchase Agreement shall not affect the validity of the sale of the Acquired Assets to Purchaser, unless such authorization is duly stayed pending such appeal. Purchaser is a good-faith purchaser of the Acquired Assets and is entitled to all of the benefits and protections afforded by Bankruptcy Code section 363(m) and other applicable law.

16.     This Court retains jurisdiction to:

(a) Interpret, implement and enforce the terms and provisions of this Order and the Purchase Agreement, all amendments thereto, any waivers and consents thereunder, and each of the agreements executed in connection therewith in all respects, with the Purchase Agreement and each of the other foregoing agreements to be enforced with the weight of this Order, and resolve any disputes thereunder, except as otherwise provided therein;

(b) Protect Purchaser and the Acquired Assets against any Interests, including, without limitation, to enjoin the commencement or continuation of any action seeking to impose on the Purchaser successor liability;

(c) Enter orders in aid or furtherance of the transactions contemplated by the Purchase Agreement;

(d) Compel delivery of all Acquired Assets to the Purchaser;

(e) Adjudicate all issues relating to any Liens or Interests in the Acquired Assets; and

(f) Adjudicate any and all issues relating to the Acquired Assets, the proceeds of the transactions, the Motion, and the Purchase Agreement.

17. All persons or entities are prohibited and enjoined from taking any action to adversely affect or interfere with the ability of the Debtors to transfer the Acquired Assets to the Purchaser in accordance with the Purchase Agreement and this Order.

18. The Purchase Agreement and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto, in a writing signed by such parties, and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtors or their estates.

19. The failure specifically to include any particular provisions of the Purchase Agreement in this Order shall not diminish or impair the effectiveness of such provisions, it being the intent of the Court that the Purchase Agreement is hereby authorized and

approved in its entirety, as it may be amended or supplemented in accordance with its terms and this Order, and in the case of the Purchase Agreement and any related agreements, with such amendments thereto as may be made by the parties in accordance with the terms and conditions of the Purchase Agreement and this Order.

20.     To the extent of any conflict between the Purchase Agreement and this Order as they relate to the rights and obligations of the Debtors and the Purchaser with respect to each other, the Purchase Agreement shall govern. To the extent of any conflict between the Purchase Agreement and this Order not within the scope of the immediately preceding sentence, including, without limitation, as they relate to the rights and obligations of third parties and the rights and obligations of the Purchaser with respect to third parties, this Order shall govern.

21.     This Order and the Purchase Agreement: (a) shall be binding in all respects upon all creditors of and holders of equity interests in any Debtors (whether known or unknown), any holders of Interests, the Purchaser and all successors and assigns of the Purchaser, the Debtors and their affiliates, the Acquired Assets and any subsequent trustees appointed in these chapter 11 cases or upon a conversion to chapter 7 under the Bankruptcy Code; and (b) shall not be subject to rejection. Nothing contained in any chapter 11 plan of reorganization or liquidation filed or confirmed in this bankruptcy case or in any related confirmation order, disclosure statement, or order approving disclosure statement shall conflict with or derogate from the provisions of this Order and the Purchase Agreement. The Purchase Agreement shall not be subject to rejection or avoidance under any circumstances.

22.     Any amounts that become payable by the Debtors to the Purchaser pursuant to the Purchase Agreement or this Order: (a) shall constitute super-priority administrative expenses of the Debtors' estates under sections 503(b)(1), 507(a)(1) and 507(b) of

the Bankruptcy Code and (b) shall be paid by the Debtors in the time and manner provided for in the Purchase Agreement and this Order.

23. All entities that are in possession of some or all of the Acquired Assets upon the Closing Date hereby are directed to surrender possession of the Acquired Assets to the Purchaser on the Closing Date.

24. In accordance with the terms of the Retention Letter with Streambank, LLC ("Streambank") and this Court's *Order Authorizing the Debtors and Debtors in Possess to Retain Streambank, LLC as Intellectual Property Disposition Consultant Nunc Pro Tunc to May 5, 2011* [Dkt. No. 121], the Debtors are authorized to pay to Streambank (i) a commission in the amount of $685,500 from the proceeds of the Sale of the Acquired Assets, and (ii) reimbursement of Streambank's reasonable out of pocket expenses, in the aggregate amount of $4,013.32, all as set forth in the *Declaration of David Peress Providing Report with Respect to Auction of Debtors' Intellectual Property and Statement of Fees and Expenses of Streambank, LLC*.

25. In the event the Purchaser is unable to close on or prior to August 31, 2011, the Debtors shall have the right to terminate the Agreement and accept the bid of the LF Centennial Limited (the "Back-Up Bidder"). In the event the Debtors accept the bid of the Back-Up Bidder, the Debtors shall be permitted to submit a revised order on substantially the terms set forth herein naming the Back-Up Bidder as the purchaser upon certification of counsel among the Debtors, the Back-Up Bidder, the Debtors' lenders, and the Creditors' Committee or seek an emergency hearing for entry of such order.

26.    The 14-day stay otherwise imposed by Bankruptcy Rules 6004(h) and 7062 is hereby waived, and this Sale Order shall be effective immediately upon entry.

Dated: Wilmington, Delaware
      August 12, 2011

                                           The Honorable Mary F. Walrath
                                           United States Bankruptcy Judge